UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
M&T MORTGAGE CORP.,

        Plaintiff,

  against.

LEO WHITE, CRIMINAL COURT OF THE CITY OF
NEW YORK, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD, NEW YORK CITY PARKING
VIOLATIONS BUREAU, THE UNITED STATES OF
AMERICA, PEOPLE OF THE STATE OF NEW
YORK, CITY OF NEW YORK DEPARTMENT OF
FINANCE, FAIRTAX, PATRICIA SYKES,

        Defendants.
------------------------------------------------------------------X
LEO WHITE,

        Third Party Plaintiff,

  v.

BETTER HOMES DEPOT, INC., ERIC FESSLER,
individually and in his capacity as President of Better
Homes Depot, Inc., GLENN JOHN, MADISON HOME
EQUITIES, INC., NADINE MALONE, individually and
in her capacity as President of MADISON HOME
EQUITIES, MICHAEL RINDENOW, PAULA C.
YEAGER, NEAL H. SULTZER, ESQ., ACKERMAN,
RAPHAN & SULTZER, PARAGON ABSTRACT,
INC., GAIL S. ZUCKER, CLA, INC., CHRISTOPHER
LIANO, ROBERT DOSCH, C. PETER DAVID, ESQ.,
and THE UNITED STATES DEPT. OF HOUSING
AND URBAN DEVELOPMENT

        Third Party Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**
04-CV-4775 (NGG)(VVP)

GARAUFIS, United States District Judge.

      Third Party Plaintiff Leo White ("Third Party Plaintiff" or "White") seeks declaratory

judgment under the Administrative Procedure Act ("APA"), 5 U.S.C. § 203, and the Declaratory

1

Judgment Act, 28 U.S.C. § 2201, that Third Party Defendant the United States Department of Housing and Urban Development ("Third Party Defendant" or "HUD") has a legal obligation under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3608, "affirmatively to further" fair housing by exercising due diligence in issuing mortgage insurance pursuant to the National Housing Act, 12 U.S.C. §§ 1708-1709. (Compl. ¶¶ 151-52.)

Third Party Defendant now moves to dismiss the complaint against it pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons set forth below, HUD's motion is DENIED.

## I.    BACKGROUND

The facts as stated in the Complaint are deemed true for the purposes of this motion. White is the owner of residential real property located at 164 Macon Street, Brooklyn, New York. (Compl. ¶ 4.) HUD insured White's mortgage of this property, which was originated by the lender Madison Home Equities, Inc. ("MHE"), and then assigned to M&T Mortgage Corporation ("M&T"). (Id. ¶ 1.) The underlying action is a mortgage foreclosure proceeding commenced by M&T against White. (Id.) White instituted the instant action against HUD for its role in an alleged conspiracy to defraud White and other minority, first-time homebuyers in a predatory lending scheme. (Id.)

## A.    Allegations of Wrongdoing by Private Third Party Defendants

In his Complaint, White makes the following allegations regarding private (not HUD) Third Party Defendants:

Third Party Defendants Better Homes Depot, Inc. ("BHD"), MHE, and BHD's and MHE's owners and operators are alleged to be the principal architects of a:

widespread conspiracy to commit fraud, in which they have enlisted the other private third party defendants as their co-conspirators in a common plan and agreement whereby they would target uninformed, inexperienced minorities embarking on the first-time purchase of a home and . . . would fraudulently induce them to buy property from BHD at grossly inflated prices, financed by [Fair Housing Act]-insured mortgages supplied by MHE.

(Compl. ¶ 22.) In August 1998, White, then a 19 year-old African-American male who earned $24,000 per annum as a doorman, contacted BHD about becoming a first-time homeowner. (Id. ¶¶ 22-23, 35.) He spoke with a BHD broker who endeavored to convince White that he should purchase a property far more expensive than what White could in fact afford. (Id. ¶¶ 23-29.)

The BHD broker persuaded White to purchase a property located at 164 Macon Street, in the Bedford-Stuyvesant section of Brooklyn. (Id.) BHD falsely represented that the property was worth at least $299,000, and was a "legal four-family" home from which he could generate rental income. (Id. ¶¶ 44-48.) In fact, BHD had purchased 164 Macon Street six weeks earlier for $150,000. The value of the house, as represented to White, was based on a fraudulently inflated appraisal MHE had commissioned. Upon purchase, BHD had illegally converted the property to a four-family home without permit or inspections. As a result, the home could not be legally rented to others. (Id. ¶¶ 47-49.)

BHD referred White to MHE, a lender that BHD routinely used to further BHD's lending scheme. (Id. ¶¶ 9-10, 22, 31, 35-38.) In the application for mortgage insurance submitted to HUD, BHD and MHE falsified White's income, claiming that he eared more than he did. (Id. ¶¶ 10, 37, 54, 58, 60-70, 117-118, 120.) White purchased 164 Macon Street through a mortgage loan in the amount of $296,555, originated by MHE and insured by HUD. (Id. ¶ 53.) At the closing on March 6, 1999, an attorney appeared who, in collusion with BHD and MHE, falsely stated that he represented White, and that he had reviewed the closing documents. (Id. ¶¶ 51-

52.)  At the closing, the note and mortgage originated by MHE was assigned to plaintiff M&T. (Id. ¶ 86.)  M&T brought a foreclosure action against White in New York Supreme Court, which led to the instant action.  (White Mem. Opp. Mot. Dismiss 21.)

**B.     Allegations of Wrongdoing by HUD**

Pursuant to the National Housing Act ("NHA"), 12 U.S.C. §§ 1708-1709, the Secretary of HUD is authorized to insure mortgages to home buyers who wish to purchase houses but who cannot afford the interim financing to do so.  HUD's regulations require that HUD, before accepting or rejecting a mortgage insurance application, review the application to ensure that the mortgage "amount does not exceed the maximum permissible for the area," that the package "include[s] a certified copy of the mortgage, a property appraisal, mortgage insurance application, and the mortgagee's underwriter certification," and that the "mortgage was not in default" when submitted for insurance.  (See HUD Mem. Supp. Mot. Dismiss Ex. 2 ("Shaffer Decl.") ¶ 4 (quoting 24 C.F.R. § 203.255(c)(1)-(7))); see also 12 U.S.C. § 1709.  Through the Direct Endorsement program, the NHA permits HUD to allow pre-approved lenders to perform appraisals, 12 U.S.C. § 1708(e)(3), and HUD's regulations permit Direct Endorsement lenders to "issue mortgages to be insured by HUD, and allow the sale transaction to close, without first submitting paperwork to HUD."   (Shaffer Decl. ¶ 4, citing 24 C.F.R. §§ 203.3, 203.5(a).)

White obtained a loan from MHE issued as part of HUD's Direct Endorsement process. (Shaffer Decl. ¶¶ 2-3.)   HUD approved MHE as a Direct Endorsement lender beginning in 1994. (Id.)  Over a year before this transaction, HUD had sanctioned MHE "for abuse of the FHA loan program by allowing false documents to be submitted which enabled home buyers to borrow beyond their means."  (Compl. ¶ 71.)

White alleges that HUD is aware that predatory brokers steer victims to predatory lenders, who inflate the purchaser's income and use inflated appraisals of property for the HUD mortgage insurance application. (Id. ¶ 100.) HUD has identified the area in which White's property is located "as the nation's number one 'hot zone' of the practice known as predatory lending." (Id. ¶ 99.) However, White maintains, HUD takes no steps to prevent predatory lending schemes, such as warning purchasers of the risks or signs of a predatory sale or loan, ensuring the inclusion of the mandatory "FHA rider" in the contract of sale setting forth the true appraised value of the home, or engaging in due diligence of mortgage insurance applications. (Id. ¶ 101, 103-6.)

In this lawsuit, White contends that HUD's "rubber-stamping" of his mortgage insurance application was a necessary element of a transaction that, had due diligence been exercised by HUD, would have been revealed as a predatory lending scheme targeting first-time minority homebuyers. (Id. ¶ 57.) White further claims that HUD's alleged failure to consider the racial impact of its actions in approving the mortgage insurance applications of minority, first-time homebuyers without meaningful review violates the Fair Housing Act's requirement that HUD act "affirmatively to further" fair housing. 42 U.S.C. § 3608(e)(5). White seeks declaratory judgment to this effect, which he alleges will assist his defense in the concomitant M&T foreclosure proceeding.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim brought pursuant to Fed R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.

1999). In deciding such a motion, the court may take into account documents referenced in the complaint, as well as documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in filing the suit. See Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hoover v. Ronwin, 466 U.S. 558, 587 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

Similar to a motion for failure to state a claim, when a court reviews a motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it accepts as true all material factual allegations in the complaint. Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (internal citations omitted). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, and "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it.'" Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d 635, 638 (2d Cir. 2005) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). In contrast to a 12(b)(6) motion for failure to state a claim, when deciding a 12(b)(1) motion for dismissal based on lack of subject matter jurisdiction, the court should not draw "argumentative inferences" in favor of the party asserting jurisdiction. See Atlantic Mut., 968 F.2d at 198 (internal citations omitted).

Where, as here, a motion to dismiss is made pursuant to both Rules 12(b)(1) and

12(b)(6), the jurisdictional motion must be considered first because if I dismiss the complaint for

lack of subject matter jurisdiction, "the accompanying defenses and objections become moot and

do not need to be determined."  United States ex rel. Kreindler & Kreindler v. United Techs.

Corp.,  985 F.2d 1148, 1156 (2d Cir. 1993) (internal quotation and citation omitted); see also

Magee v. Nassau County Med. Ctr.,  27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998) ("A court faced

with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the

jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the

merits and, therefore, an exercise of jurisdiction.").

## III.    DISCUSSION

### A.    Lack of Subject Matter Jurisdiction (Standing)

HUD moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of

subject matter jurisdiction, alleging that White does not have standing to bring the action.  HUD

contends that White has insufficiently alleged injury-in-fact and causation between HUD's

conduct and White's injuries, and that White's demanded relief against HUD would not redress

the injury claimed by White.

A party seeking judicial review of an agency action must show that the party suffers an

injury in fact, that the injury is causally related to the agency action, and that the relief sought

would redress the claimed injury.  The injury-in-fact requirement is met if the party alleges that

the defendant injured him or her individually, and that the injury is actual and imminent, not a

conjectural or hypothetical threat.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992);

McCormick v. School District of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004).  To establish

injury-in-fact, a plaintiff must show a "likelihood that he or she will be injured in the future."

McCormick, 370 F.3d at 284 (quoting Deshawn E. ex rel Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998). In addition, there is standing only where the party alleges an "injury that fairly can be traced to the challenged act of the defendant," and when the court can order relief that redresses the injury. Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976).

1.    *Injury-in-fact*

HUD urges that Third Party Plaintiff has not shown an injury-in-fact, because he cannot show a likelihood that he will be similarly injured in the future, i.e. that he is no more likely to be victim to a future predatory lending scheme than any other homebuyer. See City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983) (finding that plaintiff subjected to a chokehold by the Los Angeles Police Department lacked standing to challenge the practice because he was not substantially likely to be injured by the policy in the future). However, courts do not require that the plaintiff establish that he is likely to suffer *the same injury* in the future. An injury-in-fact can be shown "by any continuing, present adverse effects" of the past injury. O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974); see also Safir, 156 F.3d at 344.

White alleges that M&T has sued him in a foreclosure proceeding in which M&T will attempt to "cloak itself with the immunity of a 'holder in due course,'" a good faith defense which if successful would "cut off [from White] the foreclosure defenses of fraud, deception, and bad faith, and defeat counterclaims for rescission and reformation of the mortgage." (White Mem. Opp. Mot. Dismiss 21-22, citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Woodhead, 917 F.2d 752, 755-56 (2d Cir. 1990).) White's status as a defendant in a mortgage foreclosure action in which potential defenses are not available to him is analogous to other parties found to have sufficiently alleged an injury-in-fact by the Supreme Court. See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 77 (1991) (loss of right to sue in forum of choice

is injury-in-fact); <u>ARASCO, Inc. v. Kadish</u>, 490 U.S. 605, 617-18 (1989) (possibility of an adverse state court decision creates an injury-in-fact); <u>Truax v. Raich</u>, 239 U.S. 33, 38 (1915) (imminent prospect of loss of at-will employment is injury in fact); <u>see</u> <u>also</u> Laurence Tribe, American Constitutional Law 115 (2d ed. 1988) (A person subject to the "imminent prospect . . . . [of criminal prosecution] has clearly established the requisite 'injury in fact' to oppose such prosecution by asserting any relevant constitutional or federal rights."). Therefore, I find that White's allegations meet the injury-in-fact standing requirement.

*2.      Causation*

In order to establish standing, Plaintiff must also show causation by demonstrating that his injury is traceable to the challenged action of HUD. <u>Simon</u>, 426 U.S. at 41-42. White alleges that "the availability of FHA mortgage insurance to the predatory, fraudulent lender is indispensable to said lender's ability to carry out the fraudulent flip selling/lending scheme . . . alleged in this complaint." (Compl. ¶ 107). A showing of causation does not require that the plaintiff show that defendant's actions were the only cause of an injury, so long as the plaintiff's injury would not have occurred "but for" the defendant's action. <u>Duke Power Co. v. Carolina Environmental Study Group, Inc.</u>, 438 U.S. 59, 81 (1978). I find that White's allegations that the predatory lending scheme would not have been successful but for HUD's approval of his mortgage insurance show the requisite causal relationship between the agency action and White's injury.

*3.      Redressability*

Lastly, a case is justiciable only if the remedy sought is substantially likely to redress the injury claimed. <u>Utah v. Evans</u>, 536 U.S. 452, 461 (2002). White alleges that in the foreclosure proceeding M&T will claim that it is a holder in due course, and that HUD's regulatory duty to

review mortgage insurance applications will create a presumption in the foreclosure proceeding that the mortgage application was valid. (Id. at 22.) If M&T succeeds, it would "cut off the foreclosure defenses of fraud, deception, and bad faith, and defeat counterclaims for rescission and/or reformation of the mortgage." (White Mem. Opp. Mot. Dismiss 22.) White argues that a declaratory judgment that HUD's approval of White's mortgage insurance application was contrary to law because it entailed no meaningful review of the application would defeat the presumption of the validity of the transaction and entitle White to important defenses in the foreclosure proceeding. (Id.)

HUD urges that the likelihood that White's claimed injury will be remedied by any declaratory judgment that this court could issue is too speculative to present a justiciable case. However, the challenger of an agency action satisfies the redressability requirement by showing a "substantially likely" possibility of redress. Utah v. Evans, 536 U.S. at 464. In Utah v. Evans, the Supreme Court held that Utah had standing to challenge census calculations in a suit against the Census Bureau and the Secretary of Commerce. Id. Utah's injury-in-fact was its under-representation in the House of Representatives, an injury that the Census Bureau and Secretary of Commerce were powerless to redress, because only the President and congressional officials can change the distribution of congressional seats. However, the Court found that a favorable outcome in the litigation for Utah was substantially likely to cause the President and congressional officials to act to increase Utah's representation, which satisfied the redressability requirement. Id. at 463-64.

In Larson v. Valente, 456 U.S. 228 (1982), the Court held that plaintiffs met the redressability prong of the standing analysis to permissibly challenge a state regulation setting forth the reporting requirements of religious organizations even though it was uncertain whether

the regulation applied to the plaintiffs. The state argued that the group had no standing, because the state had not yet determined whether the group was 'religious,' and thus subject to the regulation. The Court held that the group had standing despite its uncertain status, because it was "substantial and meaningful relief" to make clear that the regulation does not apply to the group whether or not the state ultimately found the group to be a religious organization. Id. at 243.

As with the plaintiffs in Evans and Valente, there is a possibility in this case that a remedy would be frustrated by some as yet unforseen action. For example, M&T could decide not to proceed with the foreclosure action, the court sitting in the foreclosure proceeding might find M&T to be a holder of due course notwithstanding declaratory judgment by this court, or M&T could prevail despite the availability of White's defenses. However, the redressability of declaratory judgment to White's continuing injury is not speculative because it would support his defense in an existing and ongoing foreclosure proceeding. A declaration that HUD's mortgage insurance application process provides no meaningful review would reduce the weight of HUD's approval of White's mortgage insurance application as evidence of the validity of the transaction. As a result, I find that the sought declaratory judgment is substantially likely to redress White's alleged injuries.

Accordingly, White has shown by a preponderance of the evidence that this matter presents a case or controversy within the meaning of Article III of the Constitution. Therefore, White has standing to sue. Having decided that I have jurisdiction over this matter, I shall now turn to the merits.

**B.     Failure to State a Claim Upon Which Relief Can Be Granted**

The Administrative Procedure Act authorizes suits brought by a person adversely affected by an "agency action." 5 U.S.C. § 702. Agency action includes an "agency rule, order, license, sanction (or) relief," or failure to act on the same. Id. § 551(13). An agency action must be a final, legally required, and discrete act. Id. § 704; see also Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63-65 (2004).

The APA creates a presumption in favor of review of agency actions. Abbott v. Gardner Laboratories, 387 U.S. 136, 140 (1967). An agency action is unreviewable only when the statute precludes judicial review, 5 U.S.C. § 701(a)(1), or if the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Section 701(a)(2) is a "very narrow exception," and the agency must show that its action is committed to agency discretion by law through "clear and convincing evidence." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971) (citing Abbott, 387 U.S. at 141).

Under the APA, a court can also compel agency action "unlawfully withheld." 5 U.S.C. § 706(1). However, there is a presumption that an agency's election not to take action is unreviewable, which may be rebutted by a showing that there are statutory standards by which a court may review the withholding of an agency action. Norton, 542 U.S. at 64-65; Heckler v. Chaney, 470 U.S. 821, 829-31 (1985); Overton Park, 401 U.S. at 409; Riverkeeper v. Collins, 359 F.3d 156, 164-66 (2d Cir. 2004); Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs, 417 F.3d 1272, 1280-81 (D.C. Cir. 2005).

HUD does not contest that the applicable statutes, the mortgage insurance procedures of the National Housing Act, 12 U.S.C. § 1708-1709, and the Fair Housing Act, 42 U.S.C. § 3605, do not "preclude judicial review." 5 U.S.C. § 701(a)(1). Instead, HUD advances two

arguments in support of its position that the action of approving White's insurance application is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). First, HUD argues that there is no "law to apply" with standards by which this court may review any final agency action that White has alleged has been violated. Second, HUD maintains that White's challenge of HUD's lack of efforts to combat predatory lending in its mortgage insurance approval procedures seeks to compel an unreviewable election by HUD not to take "enforcement action." Norton, 542 U.S. at 64-65 (holding that agency omissions to enforce a law in a particular instance is a withheld action). Each of these arguments shall be discussed in turn.

1.      *Applicable Law*

White alleges that HUD's actions in approving mortgage insurance applications without considering the racial impact of the program violates the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3608, which aims to "provide, within constitutional limitations, for fair housing throughout the United States." Id. § 3601. The FHA states that the Secretary of HUD "shall administer the programs and activities related to housing and urban development in a manner *affirmatively to further* the policies" of the Fair Housing Act. Id. § 3608(e)(5) (emphasis added).

In its motion to dismiss, HUD urges that the FHA is irrelevant to this case, and argues that the "law to apply" is the mortgage insurance approval process set forth in the National Housing Act, 12 U.S.C. §§ 1708-1709. Since White does not allege a specific violation of HUD's legally required duties under the National Housing Act in approving his mortgage insurance application, HUD concludes that White's action must be dismissed. (HUD Mem. Supp. Mot. Dismiss, 8-10; HUD Reply Mem. Supp. Mot. Dismiss, 4-5.) This argument, however, mischaracterizes White's Complaint as alleging a violation of the National Housing Act alone. In fact, the Complaint alleges that HUD's actions in implementing its mortgage

insurance program implicate HUD's obligation "affirmatively to further" the FHA policies.

White alleges:

> The high risk of racial discrimination in these predatory schemes, *along with HUD's duty to prevent discrimination*, as well as HUD's possession of a vast amount of data describing and identifying this kind of discriminatory scheme, makes HUD's "rubber-stamping" of insurance applications clearly arbitrary and capricious. HUD had actual knowledge that its insurance is an indispensable part of the fraudulent and discriminatory scheme. (Compl. ¶¶ 106-7.)

(White Mem. Opp. Mot. Dismiss 10 (emphasis added).) In essence, White asks that this court review HUD's approval of his mortgage application to determine whether its approval violated HUD's statutory command to"affirmatively further" fair housing in its mortgage insurance application program. Therefore, I must now decide whether the FHA's "affirmatively to further" provision imposes any obligations on HUD implicated in this matter.

I find that the "affirmatively to further" provision in Section 3608(e)(5) of the Fair Housing Act requires HUD to consider the impact of its pattern of conduct on fair housing for racial minorities. First, the FHA, Section 3608(e)(5) requires more of HUD than to not itself intentionally discriminate. See NAACP v. Sec'y of Hous. and Urban Development, 817 F.2d 149, 154 (1st Cir. 1987) (Breyer, J.) As intentional discrimination by a federal agency is already prohibited by the Fifth Amendment of the Constitution, it is doubtful that Congress, in requiring the Secretary to affirmatively further fair housing, simply intended to restate HUD's constitutional duties. Id. at 154. Moreover, the legislative history of the Act shows that Congress intended "that HUD do more than simply not discriminate itself; it reflects the desire to have HUD use its grant programs to assist in ending discrimination and segregation . . . ." Id. (quoting FHA congressional sponsors and supporters who intended that the FHA ameliorate

racial segregation by assisting minorities "who have the resources to escape" the ghetto, id. at 154-55).

While the Supreme Court has not ruled on this issue, all courts that have considered whether the "affirmatively to further" provision allows HUD to engage in conduct that negatively impacts fair housing have found that it does not. The Second Circuit has examined this issue and has found that the FHA's "affirmatively to further" provision obligates HUD to consider the impact of its actions on racial minorities. In Otero v. New York City Housing Authority, 484 F.2d 1122 (2d Cir. 1973), the Second Circuit found that HUD had a legal obligation to consider the impact of proposed public housing programs on the racial concentration of the area in which the proposed housing was to be built. Id. at 1133-34. In so holding, the Second Circuit instructed that the "affirmatively to further" provision commands that "[a]ction must be taken to fulfill, as much as possible, the goal of open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos, of racial groups whose lack of opportunities the Act was designed to combat." Id. at 1134; see also NAACP, 817 F.2d at 156 (HUD has the obligation under Section 3608(e)(5) "to assess negatively those aspects of a proposed course of action that would further limit the supply of genuinely open housing and to assess positively those aspects of a proposed course of action that would increase that supply."); Shannon v. Dept. of Hous. and Urban Dev., 436 F.2d 809, 319 (3d Cir. 1970) (HUD's discretion in how to carry out its programs "must be exercised within the framework of the national policy . . . in favor of fair housing."); Vaughn v. Consumer Home Mortgage, Inc., 293 F. Supp. 2d 206, 211 (E.D.N.Y. 2003) (Glasser, J.) (The FHA "affirmatively to further" provision prohibits HUD in its actions, including its mortgage insurance program, from engaging in "practices that deny housing to persons on the basis of race, color, religion,

15

sex, familial status, or national origin and applies to both intentional housing discrimination and all policies and practices which have a discriminatory effect, even absent intent."); Dean v. Martinez, 336 F. Supp. 2d 477, 489 (D. Md. 2004); Suffolk Housing Services v. Town of Islip, No. CV-82-2882, 1987 WL 14131, *1-*3 (E.D.N.Y. July 14, 1987) (Glasser, J.). Therefore, White has sufficiently pled that the FHA's "affirmatively to further" provision requires HUD to consider the racial impact of its actions.

Next, HUD argues that even if the FHA obligates HUD to act in a way that does not negatively impact fair housing, the FHA provides no standards to the courts by which to review HUD's mortgage insurance application program to determine whether HUD violated this duty in approving White's application.   An agency action is reviewable if the statute does not preclude judicial review unless the action is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2); see also Overton Park, 401 U.S. at 410 ("The legislative history of the [APA] indicates that [the exception for action 'committed to agency discretion'] is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.")  Hence, HUD's argument faces the onerous burden of proving by "clear and convincing evidence," Overton Park, 401 U.S. 402, 410 (1971) (citing Abbott, 387 U.S. at 141), that the FHA's "affirmatively to further" provision provides this court with "no meaningful standard against which to judge the agency's exercise of discretion."  Chaney, 470 U.S. at 830.

I find then-Judge Breyer's analysis in NAACP instructive as to the question of whether the "affirmatively to further" provision provides enough guidance for courts to review HUD agency actions under the APA.  In NAACP, appellants alleged that HUD violated its obligations under Section 3608(e)(5) by failing to prevent discrimination in its administration of its Community Development Block Grant ("CDBG") and Urban Development Action Grant

("UDAG") programs in the City of Boston.  NAACP, 817 F.2d at 151.  After a trial, the district court found that Boston had a history of racial housing discrimination, and that HUD had failed to assess the needs of the low-income community in its administration of its CDBG and UDAG programs.  Id.  The First Circuit held that the APA provides for the review of HUD's actions for a violation of Section 3608(e)(5) in part because "the court can find adequate standards against which to judge the lawfulness of HUD's conduct."  The First Circuit elaborated:

> This standard, like many, may be difficult to apply in borderline instances, yet a court should be able to determine a clear failure to live up to the instruction over time . . . . Doing so, in the context of a claim of serious failure over time to try to further Title VIII's goals, need not involve the court in 'superintend[ing] economic and managerial decisions," Hahn v. Gottlieb, 430 F.2d [1243,] 1249 [(1st Cir. 1970)], or in reweighing matters that Congress has asked HUD to balance.  Rather, this case seems to call for a more straightforward evaluation of whether agency activity over time has furthered the statutory goal, and, if not, for an explanation of why not and a determination of whether a given explanation, in light of the statute, is satisfactory.

 NAACP, 817 F.2d at 158.  The First Circuit in NAACP elucidates that HUD's discretion in how it acts in furtherance of the goal of fair housing does not itself mean that its actions are "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Rather, the more discretion that HUD has to design its program, the less likely it is that a court will find its actions "an abuse of discretion."  5 U.S.C. § 706(2)(A); see 5 K. Davis, *Administrative Law Treatise* § 28.5, at 271 ("the key question is not *whether* agency action is committed to agency discretion by law, but *the extent that* it is so committed") (emphasis in original).

I am persuaded by the First Circuit's reasoning in NAACP that Congress intended, and the APA permits, courts to review actions by HUD brought by persons seeking review of final agency actions who allege specific instances in which HUD failed to consider the impact of its

mortgage insurance program on fair housing for racial minorities.[1]  White has alleged that

HUD's mortgage insurance program entails a pattern of conduct that promotes unfair housing

practices that target racial minorities.  These allegations are sufficient to state a claim that

HUD's conduct in its mortgage insurance approval process violates its obligation under the FHA

"affirmatively to further" fair housing.

HUD has twice argued in this district unsuccessfully that the "affirmatively to further"

provision provides insufficient standards by which to review its program actions.  Vaughn, 293

F. Supp. 2d at 211; Suffolk Hous. Serv., 1987 WL 14131, at *3.  In both cases, the court relied

on NAACP and found that the "mere fact" that Section 3605(e)(5) grants broad discretion does

not render HUD's actions unreviewable "unless the statutory scheme, taken along with other

relevant materials, provides absolutely no guidance as to how that discretion is to be exercised."

Vaughn, 293 F. Supp. 2d at 211 (quoting Suffolk Hous. Serv., 1987 WL 14131, at *3).

In Vaughn, Judge Glasser denied a HUD motion to dismiss in a case that is factually

identical to the present case.  There, plaintiffs, joint purchasers of residential real property in

Brooklyn, New York, alleged that a real estate brokerage firm falsely inflated the value of the

home and stated that it could generate rental income, and that the firm steered plaintiffs to

complicit attorneys and lenders, who submitted fraudulent appraisal reports to HUD, which

---

[1] HUD relies on Norton v. Southern Utah Wilderness Alliance, 543 U.S. 55 (2004), for the argument that agency actions pursuant to laws that provide discretion to the agency are unreviewable.  (HUD Mem. Supp. Mot. Dismiss 3.)  However, Norton analyzed an APA challenge based on 5 U.S.C. § 706(1) to compel an agency to act, which involves a different standard that shall be discussed infra.  Norton, 542 U.S. at 64.  Norton did not overrule the long line of cases that review agency actions in which the "law to apply" provides discretion to agencies.  Holding such actions unreviewable "would be to frustrate Congress's clear intention, and the long tradition, of allowing judicial review when it can carry out an effective function." Robbins v. Reagan, 780 F.2d 37, 46 (D.C. Cir. 1985) (per curiam).

approved the loans based upon inflated sale prices.  Id. at 209.  Plaintiffs argued that HUD had

actual knowledge that the neighborhood was a "hot zone" for predatory lending schemes, but

that it "fail[ed] to exercise any precaution or diligence even though FHA insurance is an

essential part of the flip-selling scheme."  Id. at 210.  The court, finding that plaintiffs'

allegations provided "specific instances through which HUD's actions may be evaluated," held

the reasoning in NAACP controlling.  Vaughn, 293 F. Supp. 2d at 121; cf. Americans Disabled

for Attendant Programs Today ("ADAPT") v. Dept. of Hous. and Urban Dev., 170 F.3d 381,

388-89 (3d Cir. 1999) (distinguishing NAACP because "[w]e are not dealing with a challenge to

specific HUD conduct; instead, we are faced with a broad-based attack on HUD's investigative

and enforcement scheme").

    In the instant case, HUD fails again to show this court by clear and convincing evidence

that the "affirmatively to further" provision involves no standards by which to review its

conduct.  Accordingly, I find unavailing HUD's argument that Section 3608(e)(5) imposes no

standards by which to review HUD's actions.

2.    Challenge to Agency Action vs. Compelling Withheld Action

    Second, HUD argues that White's action does not seek review of an agency action, but

rather to compel an action by HUD to take measures to end predatory lending practices.  (HUD

Mem. Supp. Mot. Dismiss 8-14.)  Further, HUD contends that the Supreme Court in Norton and

Chaney has foreclosed this action because there is a presumption of unreviewability of agency

elections not to take action, and HUD argues that White has failed to rebut this presumption with

a showing that the FHA's "affirmatively to further" provision compels HUD to take action.  (Id.)

    The Administrative Procedure Act grants judicial review to persons "suffering legal

wrong because of agency action, or adversely affected or aggrieved by agency action within the

meaning of a relevant statute . . . ."  5 U.S.C. § 702.  Such an action must be "final" by the

agency.  Id. § 704.  "Agency action" is defined by the APA as "the whole or part of an agency

rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*."  Id. §

551(13) (emphasis supplied).  In contrast to review of an agency action, a court reviews a *failure*

*to act* in order to decide whether to "compel agency action unlawfully withheld or unreasonably

delayed."  Id. § 706(1)  The Supreme Court has instructed that there is a "presumption of

reviewability" for final agency actions under Section 706(1), while there is a rebuttable

"presumption . . . that judicial review is not available" of agency "[r]efusals to take enforcement

steps" under Section 706(2).  Chaney, 470 at 831; see also Norton, 543 U.S. at 63-64.

Therefore, I must decide whether White challenges an agency action or whether, as HUD

argues, the Complaint seeks to compel withheld action and is controlled by Norton.  If White has

properly alleged an agency action, I have already found sufficient standards in the FHA

"affirmatively to further" provision to review it.  However, if, as HUD claims, White has alleged

an agency *inaction*, I must review whether White alleged sufficient facts to rebut the

presumption of unreviewability of the agency inaction.  I find that White's allegations describe

an agency action, and not an action withheld.

HUD correctly states that White's Complaint seeks to compel HUD to perform actions

that were withheld in HUD's review of his mortgage insurance application.  For instance, White

seeks to compel the exercise of due diligence in its mortgage insurance approval process to

prevent discrimination, a warning to prospective minority purchasers/borrowers of the dangers

of predatory lenders, and that an appraisal by "the FHA Commissioner . . . is forwarded to

purchasers prior to the completion of the home sale."  (HUD Mem. Supp. Mot. Dismiss at 8.)

Hence, HUD urges that this action is properly viewed as one to compel the withholding of

action. Further, HUD argues that none of these actions are legally required, discrete actions, and so must be dismissed under <u>Norton</u>. (<u>Id.</u> (citing <u>Norton</u>, 542 U.S. at 64).)

HUD's argument inheres in the difficulty of differentiating an agency action from an agency's withholding of action. At its most elastic interpretation, the action/compelling withheld action dichotomy is circular: All challenges to an action seek to compel some other action. Any meaningful distinction between the two necessarily involves drawing a line between a challenge to an action taken by an agency, and that of an agency that refuses or fails to act. Mindful of Justice Scalia's definition of a withholding of action writing for the majority in <u>Norton</u> as "the omission of an action without formally rejecting a request - for example, the failure to promulgate a rule or take some decision by a statutory deadline," <u>Norton</u>, 542 U.S. at 63, I find that HUD's approval of White's application as part of its mortgage insurance program cannot be logically understood as the omission of an action.

A review of the factual background of <u>Chaney</u> and its progeny shows that at issue here is an action taken by the agency, not the election by an agency not to act. In <u>Chaney</u>, the Supreme Court considered a challenge by prison inmates sentenced to death by lethal injection, who petitioned the Food and Drug Administration (FDA) for enforcement of a law that considered "misbranded" the "unapproved use of an approved drug." <u>Chaney</u>, 470 U.S. at 823-24 n.1 (quoting 21 U.S.C. § 352(f)). The FDA decided not to institute enforcement action. <u>Id.</u> at 827. The question thus presented to the Court was "the extent to which determinations by the FDA *not to exercise* its enforcement authority over the use of drugs in interstate commerce may be judicially reviewed." <u>Id.</u> at 828 (emphasis added).

The Court again considered whether an agency inaction was reviewable in <u>Norton</u>. In <u>Norton</u>, the Bureau of Land Management (BLM) implemented a law requiring the agency to

balance the various competing uses of land so as to protect against the depletion of land resources. Norton, 542 U.S. at 58. The increasing popularity of recreational off-road vehicle ("ORV") use led environmental groups to seek to compel the BLM to restrict ORV's, which alleged that the agency's failure to violate an obligation not to allow uses that impermissibly impaired the land. Id. at 60-61. The Court thus considered plaintiffs' allegation that "BLM *failed to take action* with respect to ORV use that it was required to take." Id. at 61 (emphasis added).

Circuit courts have consistently held that Chaney and Norton stand for the proposition that a court reviews an APA challenge to an agency pursuant to Section 706(1) if the agency abstained from enforcing a law or investigating potential violations of law. In Riverkeeper v. Collins, 359 F.3d 156 (2d Cir. 2004), the Second Circuit dismissed an action seeking to compel the United States Nuclear Regulatory Commission ("NRC") to mandate operators of nuclear power plants to make safety-related changes to protect against threats to national security. Id. at 158. The Second Circuit found Chaney controlling because it raised the issue of "whether the NRC's decision not to enforce what [petitioner] asserts are applicable . . . [statutes and regulations] with respect to [the nuclear power plants]." Riverkeeper, 359 F.3d at 166. Similarly, the Ninth Circuit in Ctr. for Biological Diversity v. Veneman, 394 F.3d 1108 (9th Cir. 2003) considered an allegation that the Forest Service, in planning for water and land use in a national forest and designating some rivers as protected, failed to consider other potentially eligible rivers. Because the plaintiff failed to point to any specific act by the agency leaving those rivers unprotected, the court held that the Norton Court's proscription of "broad programmatic challenges" that allege no "discrete agency action" foreclosed plaintiff's suit. Id. at 1113.

In ADAPT v. Dept. of Hous. and Urban Dev., 170 F.3d 381 (3d Cir. 1999), the Third Circuit considered a housing group's challenge to an alleged nationwide failure by HUD to enforce its accommodation regulations, which require that housing providers that receive federal funding to make some units accessible to individuals with hearing, vision, and mobility impairments. The court held that the plaintiff's claim that "HUD has completely abdicated its responsibility by failing to initiate investigations and enforcement actions to ensure that housing providers [comply with the regulation]" sought to compel an investigation of potential violations of law, and was presumed unreviewable. Id. at 385.

The present case is distinguishable from those cited above. HUD's evaluation of mortgage insurance applications is part of its regular process of receiving and reviewing applications from FHA-approved lenders, and involves no purely discretionary act of enforcement or investigation of the type found unreviewable in Chaney, Norton, and Riverkeeper. White does not seek a broad programmatic challenge as did the plaintiffs in ADAPT and Veneman, but rather alleges a specific instance of alleged illegal conduct.

Moreover, the concerns driving the Court's reluctance to review agency inactions in Chaney and Norton are not present here. First, an agency decision "not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." Chaney, 470 U.S. at 831; see also Norton, 542 U.S. at 60; cf. Hahn v. Gottlieb, 430 F.2d 1243, 1249-50 (1st Cir. 1970) (HUD entitled to deference in evaluating the design and cost of housing and estimates of vacancy rates.). In contrast, in the instant challenge, White claims that HUD failed to consider its duty not to promote racial discrimination in housing, an area that involves no competing interests to balance, and in which HUD claims no specific expertise.

Second, and importantly, the Court in <u>Norton</u> cautioned against undue judicial interference in which "it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." <u>Norton</u>, 452 U.S. at 66-67. However, this court does "not see how a one-time review of HUD's practices under an 'abuse of discretion' standard can pose a serious threat to the agency's effectiveness." <u>NAACP</u>, 817 F.2d at 159.

The case at bar is analogous to other administrative law cases presumed reviewable in which the agency commits to action but allegedly fails to consider the necessary elements of that action. This distinction is clarified by the Third Circuit in <u>ADAPT</u>, which distinguished its holding from that of its prior decision in <u>Shannon v. Dept. of Hous. and Urban Development</u>, 436 F.2d 809, 319 (3d Cir. 1970). In <u>Shannon</u>, the court held that HUD violated the FHA's "affirmatively to further" provision when it "approved an apartment project in an urban renewal area without considering the socio-economic impact of its decision." <u>ADAPT</u>, 170 F.3d at 388 (citing <u>Shannon</u>, 436 F.2d at 820-21). In <u>ADAPT</u>, the court found that HUD "has no affirmative duty under any statute or regulation to initiate nationwide investigation and prosecution of all potentially discriminatory housing practices." <u>ADAPT</u>, 170 F.3d at 388. By contrast, the <u>ADAPT</u> court reasoned, in <u>Shannon</u> HUD had already decided to act, and so was obligated to "consider the mandates of the governing acts and regulations." <u>Id.</u>; <u>see also</u> <u>Veneman</u>, 394 F.3d at 1113-14 (granting motion for leave to amend for challengers to allege "specific failures of the Forest Service to consider specific rivers when planning for specific projects" as a viable challenge to a "discrete agency action" permitted by the <u>Norton</u> Court).

The facts of this case are analogous to those that the Third Circuit considered in <u>Shannon</u>. White alleges that HUD failed to consider the impact of its decisions on fair housing when it

approved White's mortgage insurance application. Having committed to action, HUD must consider the FHA's "affirmatively to further" mandate.

Therefore, I find that this action does not seek to compel an enforcement action or an investigation of potential violations of law, which are considered "omissions of an action" by the Norton Court and presumed unreviewable under the APA. It is uncontested that HUD was legally required to consider White's application for mortgage insurance, that HUD approved White's application, and that this approval was final. Under these circumstances, I find that White alleges a final agency action and not the type of action to compel enforcement action rejected in Norton, but rather is an instance in which HUD has committed to action. See Shannon, 436 F.2d at 820-21; Nat'l Ass'n of Home Builders v. United States Army Corp of Eng'rs, 417 F.3d 1272, 1281 (D.C. Cir. 2005). Thus, I find HUD's argument that White's allegations seek to compel a withheld action is without merit.

## IV. CONCLUSION

White has standing to challenge HUD's review of his mortgage insurance application because he has shown by a preponderance of the evidence an injury-in-fact, that HUD caused the injury, and that the demanded relief would redress the injury. Furthermore, I find that White has sufficiently alleged a claim that is reviewable under the APA. Accordingly, HUD's motion to dismiss is DENIED.

SO ORDERED.

Dated: January 9, 2006       /s/ Nicholas G. Garaufis
   Brooklyn, NY       NICHOLAS G. GARAUFIS
              United States District Judge