```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
M&T MORTGAGE CORP.,
                              Plaintiff,
        v.

LEO WHITE, et al.,                                    DECISION AND ORDER
                              Defendants.
----------------------------------------------------------------x            04 CV 4775 (NGG) (VVP)
LEO WHITE,
                 Third-Party Plaintiff,
        v.

BETTER HOMES DEPOT, MADISON HOME
EQUITIES, INC., NADINE MALONE, MICHAEL
RINDENOW, et al.


                 Third-Party Defendants.
----------------------------------------------------------------x
```
POHORELSKY, Magistrate Judge:

Before this court is a motion filed by Leo White, the third-party plaintiff in this action, seeking to disqualify The Law Office of Steven Cohn, P.C. ("Cohn") from its representation of several third-party defendants due to what White contends are irreconcilable conflicts of interest. For the reasons discussed below, the motion is denied.

## BACKGROUND

The court presumes familiarity with the facts underlying the present action and sets forth only those facts relevant to deciding White's motion which are adduced from the parties' submissions as well as from a transcript of a hearing held by this court in connection with the motion to disqualify.

Briefly stated, in the third-party action, which is the one of relevance at the moment, White contends that the third-party defendants were involved in a fraudulent scheme to sell

houses of dubious value to unwitting consumers – White allegedly being one of them. This scheme involved among other things the alleged fabrication of loan applications which were used in securing mortgages for the consumers who purchased these allegedly overvalued houses from the third-party defendants. Madison Home Equities, Inc., a mortgage originator, Nadine Malone, its owner and principal, and Michael Rindenow, a former employee of Malone, all third-party defendants here, are alleged to have been involved in the mortgage component of the fraudulent scheme. These three parties are represented by the firm of Steven Cohn, P.C. ("Cohn"), with whom Malone has had a long-standing relationship both as a client and in other business matters as well.

The core of the motion to disqualify involves what White argues are the "irreconcilable conflicts of interest" inherent in Cohn's dual-representation of Malone and Rindenow because they once had an employer-employee relationship during the period in which the fraudulent acts allegedly took place. As a result, White contends that Cohn cannot represent fully the interests of either Malone or Rindenow. Specifically, White argues that Cohn is unable to assert various available defenses on behalf of Malone and Rindenow, and has not pressed available cross-claims that they have against each other, because to do so on behalf of one would conflict with the interests of the other.

After the motion was fully briefed the court held a *Dunton* hearing,[1] which was attended by, among others, Malone, Rindenow, and Steven Cohn, who was there in his capacity as counsel to both Malone and Rindenow. At the hearing the court sought to determine whether

---

[1] The name of the hearing is derived from a leading Second Circuit decision in the case of *Dunton v. Suffolk County*, 729 F.2d 903, 908-09 (2d Cir. 1984), which held, in part, that "[w]here a conflict is serious and disqualification might be warranted, the district court is under a duty to ensure that the client fully appreciates his situation."

Malone and Rindenow were fully aware of the potential conflicts inherent in Cohn's representation of them both, and, given such potential conflicts, whether they were willing to have Cohn continue in its representation of their interests. The court took testimony from Malone and Rindenow as to their understanding of these potential conflicts, after which both parties consented to Cohn's continued representation. Malone and Rindenow also waived the right to use any potential conflicts that may arise from Cohn's dual-representation as grounds to attack a final judgment or any other kind of formal resolution in this matter.

## DISCUSSION

### I. Legal Standard

Federal courts have the inherent authority "to disqualify attorneys in litigation pending before them" when such disqualification is "necessary to preserve the integrity of the adversary process . . . ." *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1245-46 (2d Cir. 1979). While courts may turn to the American Bar Association (ABA) and state disciplinary rules for guidance in such matters, because the power to disqualify counsel is derived from the federal courts themselves, " 'the only truly binding authority on disqualification issues is [Second] Circuit precedent.' " *Solow v. Conseco, Inc.*, No. 06 CIV 5988, 2007 WL 1599151, at *3 (S.D.N.Y. June 4, 2007) (citation omitted). In that regard and as the Second Circuit has made clear "not every violation of a disciplinary rule will necessarily lead to disqualification," *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted), and the decision of whether or not to disqualify counsel is left to the sound discretion of the trial court, *Cmty. Programs of Westchester Jewish Cmty. Servs. v. City of Mount Vernon*, No. 06 Civ. 3332, 2007 WL 1484037, at *1 (S.D.N.Y. May 21, 2007) (citation omitted).

Judge Garaufis has elaborated on the standards and principles governing disqualification of attorneys, observations this court finds instructive in deciding the present motion:

> Motions for disqualification require a delicate balancing of interests. Ensuring that court proceedings are conducted with the utmost integrity and that counsel act in accordance with the highest standards of professional ethics must be weighed against judicial economy and a party's right to retain counsel of its own choosing. The Second Circuit has clearly articulated the standard district courts must apply in balancing these interests. That standard, while recognizing the need to check certain egregious forms of misconduct, promotes the aim of judicial economy by leaving less serious allegations of ethical impropriety to the "federal and state comprehensive disciplinary machinery."

*European Cmty. v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 303 (E.D.N.Y. 2001) (Garaufis, J., Pohorelsky, Mag. J.) (quoting *Nyquist*, 590 F.2d at 1246) (affirming Magistrate Judge Pohorelsky's denial of motion for disqualification).

To that end, courts have recognized that a party seeking to disqualify counsel "bears a heavy burden of proving facts required for disqualification," a key concern being that "disqualification motions are often interposed for tactical reasons [and] [e]ven when made in the best of faith . . . cause delay." *In re Joint Eastern and Southern Dist. Asbestos Litig*. 133 F.R.D. 425, 429 (E. & S.D.N.Y. 1990) (Weinstein, J.) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92, 794 (2d Cir. 1983)). Therefore, "[a]lthough the objective of apprehending all violations, regardless of their severity, is a laudable goal, it is unattainable without inviting the wholesale filing of motions for tactical reasons. The result would be needless disruption and delay of litigation, thereby impairing the efficient administration of justice." *European Cmty.*, 134 F. Supp. 2d at 304 (quoting *Bottaro v. Hatton Assocs.*, 690 F.2d 895, 896 (2d Cir. 1982)) (footnote and internal quotations omitted).

The key then to determining whether disqualification is warranted rests on whether the movant can show "that the presence of a particular counsel will taint the trial by affecting his or her representation of a case." *Id.* at 303 (quoting *Bottaro*, 690 F.2d at 896) (additional citations omitted). With "rare exceptions" this occurs in only two kinds of cases, one of which is "where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility[2] undermines the court's confidence in the vigor of the attorney's representation of his client." *Nyquist*, 590 F.2d at 1246 (footnote and citation omitted).[3] Even when such a situation is implicated, however, disqualification is unwarranted unless there exists "a significant risk of trial taint." *Drag Racing Techs., Inc. v. Universal City Studios, Inc.*, No. 02 Civ. 958, 2003 WL 1948798, at *3 (S.D.N.Y. Apr. 24, 2003) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)) (additional citations omitted). This is determined "in the context of the particular facts presented by each case." *European Cmty.*, 134 F. Supp. 2d at 305 (quoting *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1464 (S.D.N.Y. 1985)); *see also Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, No. CV-94-3659, 2004 WL 62560, at *5 (E.D.N.Y. Jan. 12, 2004) ("Application of the Code of Professional Responsibility to disqualification motions requires a fact-specific analysis.") (citation omitted).

**II.    Analysis**

---

[2]Canon 5 states that "[a] lawyer should exercise independent professional judgment on behalf of a client." Canon 9 states that "[a] lawyer should avoid even the appearance of professional impropriety." Model Code of Prof'l Responsibility Canons 5 & 9 (1983).

[3]The other scenario, not relevant to the present motion, arises "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . thus giving his present client an unfair advantage." *Id.* (footnote and citations omitted).

After reviewing the papers and having received the testimony of Malone and Rindenow at the *Dunton* hearing, the court has little trouble concluding that disqualification is not warranted here. Despite his voluminous submissions, White points to no clearly defined conflict of interest, either actual or potential, that meets the Second Circuit's exacting "trial taint" standard.

White's strongest argument for disqualification is that Cohn's dual-representation of Malone and Rindenow creates an actual conflict of interest, or the potential for one, because in order to fully represent the interests of Malone and Rindenow, Cohn may be required to take positions adverse to either party by virtue of their roles in the fraudulent scheme at issue – Malone was the sole owner of Madsion and Rindenow was an employee there. For example, White argues that Cohn would be hampered in asserting indemnification or contribution-like cross-claims on behalf of either Malone or Rindenow since, in order to do so effectively, Cohn would invariably have to place the blame, wholly or in part, on the party against whom the claim is directed.[4] This is already evident, White contends, because neither of them have asserted cross-claims against each other, even though they have cross-claimed against all other third-

---

[4] Rule 13(g) of the Federal Rules of Civil Procedure governs the assertion of cross-claims against a "co-party" and provides in full:

> A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Fed. R. Civ. P. 13(g).

party defendants[5] and despite "obvious legal reasons" for bringing cross-claims against each other.

Even if what White argues is true, he still fails to demonstrate how this translates into trial taint that warrants disqualification. In rushing to seek counsel's disqualification, White fails to address the many issues left open by his disqualification argument. For one, White does not identify the "obvious legal reasons" that should have prompted Malone and Rindenow to cross-claim against each other. Indeed, there appears to be an entirely sound reason why Cohn decided not to bring such claims since the pleadings and evidence adduced thus far in this case indicate that Cohn intends to present a unified defense on behalf of both Malone and Rindenow, the singular aim of which is to discredit White's accusations of fraudulent conduct. Of particular import in that regard is the continued denial of wrongdoing by Malone and Rindenow in their deposition testimony as well as in the pleadings. Indeed, in a case where disqualification was sought because two of the defendants were parties to an indemnification clause which the plaintiffs argued would have been nullified because those two defendants were represented by the same firm and thus would be unable to bring indemnification claims against each other, the court there found disqualification unwarranted, in part because of counsel's insistence that counsel intended to present a "unified defense to demonstrate that the plaintiff's allegations are false." *Drag Racing Techs.*, 2003 WL 1948798, at *4.

Depending on how the case unfolds, there is of course the potential for Cohn to change course and decide that either Malone or Rindenow should seek indemnification and/or

---

[5]The only exception being Paula C. Yeager, also an employee at Madison, who, along with Madison, Malone, and Rindenow, are all represented by Cohn.

contribution against the other. If that occurs, Cohn may indeed be conflicted out of the case, perhaps even without the need for a disqualification motion. *See Dunton* 729 F.2d at 909 ("[A] court is under a continuing obligation to supervise members of its Bar.") (citations omitted).[6] At the moment, however, the likelihood that Malone or Rindenow would cross-claim against each other is remote, especially considering each party's continued denial of wrongdoing, evidence of which White himself has brought to the court's attention. (*See* White Mem. In Support of Disqualification Mot. 9-14.) Indeed, resorting to a "point the finger" strategy now, which requires that a party admit at least partially to wrongdoing, would subject Malone or Rindenow to attacks on their credibility after they have already testified, consistently, that neither one of them had committed the acts complained of.

White argues that he would suffer irreparable injury and unfair disadvantage if Cohn is permitted to continue advancing a unified defense on behalf of Malone and Rindenow throughout pretrial proceedings, only to ambush White by switching to inconsistent defenses on behalf of them at trial. He catalogues a number of ways in which such last minute changes in position by them would unfairly prejudice him. Those consequences, however, do not flow from Cohn's representation of both Malone and Rindenow. They could adopt such tactics even if they were separately represented. Indeed, it can be argued that Cohn's representation of both of them actually serves to reduce the possibility that they will adopt inconsistent defenses at the last minute because to do so would result in an actual conflict of interest requiring Cohn to withdraw from representing both of them.

---

[6]This possibility was explained to the parties by the court during the *Dunton* hearing. (*See Dunton* Hr'g Tr. 7:11-19, 33:15-34:4, Feb. 1, 2007.)

Finally, even if White has demonstrated the existence of actual trial taint, which this court believes he has not done, the sworn statements by Malone and Rindenow, in declarations and before this court, that they consent to Cohn's continued representation despite the possibility of conflicting interests through Cohn's dual-representation (*see* Cohn Mem. In Opp'n to Disqualification Mot. Exs. B & C; *Dunton* Hr'g Tr. 32:14-35:6) effectively erases any such taint. *See Drag Racing Techs.*, 2003 WL 1948798, at *4 ("Because the defendants have chosen to pursue a unified defense against the plaintiff's charges, and *because the defendants have demonstrated their informed consent to joint representation*, permitting them to go forward with joint representation does not sufficiently increase the risk of trial taint.") (citation omitted) (emphasis added). In addition, Malone and Rindenow have both expressly waived their rights to use any potential conflicts of interest that may arise from Cohn's simultaneous representation as grounds to attack a final judgment or any other kind of resolution to this matter (*Dunton* Hr'g Tr. 35:7-16). This provides additional assurance to this court that any trial taint that may exist cannot be used by either of them to upset any favorable result the third-party plaintiff may achieve in this litigation.

## CONCLUSION

For the foregoing reasons, the third-party plaintiff's motion to disqualify The Law Office of Steven Cohn, P.C. from representing his clients in this action is denied.

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
September 26, 2007